UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN MICHAEL AVERS,

                              Plaintiff,                    17-CV-0532Sr

v.

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

                              Defendant.

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #20.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on August 10, 2011, alleging disability beginning June 1, 2010, when he was 56 years old, due to obsessive compulsive disorder ("OCD"), panic disorder, agoraphobia, depression and acute anxiety. Dkt. #5, pp.203-204 & 231.

On April 17, 2013, plaintiff, represented by counsel, appeared and testified, along with an impartial vocational expert, Donald Schader, before

Administrative Law Judge ("ALJ"), David Lewandowski. Dkt. #5, pp. 43-80. Plaintiff explained that although he has lived with OCD, anxiety and depression for all of his adult life, he maintained a successful law practice until a new provider diagnosed him as bipolar and changed his medication, causing an abrupt and bizarre change in his personality which led to his disbarment. Dkt. #5, pp.53-54. When he attempted to return to his prior prescription regime, it no longer worked so he was taking 11 prescribed psychiatric medications every day and 3 additional medications as needed, but was constantly fatigued, unmotivated, joyless and unable to assume responsibility for any household tasks or perform under time limitations or respond to changes in routine. Dkt. #5, pp.53-54, 57-61, 74-75. When asked to assume, *inter alia*, that plaintiff could only be expected to understand, remember and carry out simple tasks, interact with others occasionally, withstand occasional changes in his workplace and not be expected to produce at a fast rate, the vocational expert opined that plaintiff could perform light work as a mail room clerk, office helper or parking lot attendant. Dkt. #5, pp.76-77. The vocational expert further opined that plaintiff would not be able to sustain competitive employment if he was off task more than 15% of the workday or absent more than four days per month. Dkt. #5, p.77.

The ALJ rendered a determination that plaintiff was not disabled on April 2, 2014. Dkt. #5, pp.82-96. The Appeals Council granted review and remanded the matter back to the ALJ to give further consideration as to plaintiff's capacity to perform

jobs at an exertional level higher than light[1] and to consider plaintiff's maximum mental residual functional capacity ("RFC"). Dkt. #5, pp.101-103.

On September 9, 2015, ALJ Timothy McGuan conducted a hearing at which plaintiff, represented by counsel, and vocational expert Christine Ditrinco, appeared and testified. Dkt. #13. Plaintiff testified that he continued to take approximately a dozen medications every day, which left him fatigued and unable to concentrate or remember details or maintain a schedule. Dkt. #13, pp.8 & 13-14 & 17. Although his panic attacks had abated with the medication, he testified that he continued to feel that his life was pointless and without any future and that he no longer derived pleasure from his previous activities. Dkt. #13, p.11. He continues to ruminate, explaining that he reads the same line over and over again and attempts to align his thoughts and objects he encounters in his daily life into his good numbers: 3, 5, 7, 10 and 12. Dkt. #13, p.12. When asked to assume, *inter alia*, that plaintiff could only understand, remember and carry out simple, unskilled tasks and occasionally interact with others and tolerate changes in the work setting, with no fast-paced production rate and was able to be on task no more than 85% of the workday, the vocational expert opined that there were no jobs at a medium or higher level exertion which plaintiff could perform. Dkt. #13, p.19. When asked to assume, *inter alia*, that plaintiff could occasionally remember and carry out complex and detailed tasks and could occasionally interact with the public, but have no limitations in his interactions with

---

[1] Pursuant to Rule 202.02 of the Medical-Vocational Guidelines, given plaintiff's age, he would be deemed disabled if he was restricted to jobs at the light exertional level.

coworkers or supervisors, the vocational expert opined that plaintiff could work as an inventory clerk or kitchen clerk, which are both medium exertion, semi-skilled positions. Dkt. #13, pp.19 & 22. In each of these positions, the vocational expert testified that plaintiff could not miss more than one day of work per month or be off task more than 10% of the workday. Dkt. #13, pp.23-24.

The ALJ rendered a decision that plaintiff was not disabled on November 24, 2015. Dkt. #5, p.6. The Appeals Council denied review on April 18, 2018. Dkt. #5, p.39. Plaintiff commenced this action seeking review of the Commissioner's final decision on June 13, 2017. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since June 1, 2010; (2) plaintiff's OCD, generalized anxiety disorder, major

depressive disorder, hypersomnia, insomnia and obstructive sleep apnea constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the capacity to perform a full range of work at all exertional levels with the following non-exertional limitations: plaintiff can understand, remember and carry out simple tasks and occasionally understand, remember and carry out complex and detailed tasks, interact with the public and tolerate changes in the work setting but cannot perform jobs requiring a fast-paced production rate and will be off task less than 15% of the time; and (5) plaintiff was unable to perform his past relevant work as an attorney but retained the functional capacity to work in semi-skilled, medium exertion positions such as inventory clerk or kitchen clerk and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.11-20.

Plaintiff argues that the ALJ failed to fully consider the opinions of plaintiff's treatment providers and ignored significant evidence of disability within the medical record. Dkt. #14-1, p.14. Plaintiff specifically argues that the ALJ failed to explain why he rejected multiple opinions that plaintiff's medical condition would cause him to be absent from work more than four days per month. Dkt. #14-1, p.19. Plaintiff also challenges the ALJ's determination that plaintiff's condition had improved over time. Dkt. #14-1, p.19.

The Commissioner responds that the ALJ's decision is supported by substantial evidence and based upon appropriate legal standards. Dkt. #18-1, p.12. Specifically, the Commissioner responds that the ALJ properly determined that

plaintiff's alleged degree of limitation was not fully credible given evidence of medical improvement and plaintiff's reported activities of daily living, including out of state travel and babysitting his grandchildren. Dkt. #18-1, pp.15 & 17. Furthermore, the Commissioner argues that the ALJ properly weighed the opinions of plaintiff's treating physicians against the medical evidence in the record, particularly evidence of plaintiff's consistent improvement over time. Dkt. #18-1, pp.18-20.

The ALJ's determination that plaintiff could engage in semi-skilled work with medium or higher exertional levels is not supported by substantial evidence. Despite a plethora of psychiatric medication, treatment notes of psychologist Jeffrey Roach, who has treated plaintiff from 2002-2007 and 2010 to the present, consistently emphasize plaintiff's continued depression and ongoing difficulty with fatigue, attention, focus and concentration; identifies his progress as poor and struggling; and indicates weight loss, disheveled appearance and compulsive behavior. Dkt. #5, pp.739-774. Although mild progress is noted on occasion, particularly following resolution of situational stressors involving family, the overall impression set forth in the treatment notes clearly supports Dr. Roach's opinion that plaintiff's depression, OCD and, to a lesser extent, anxiety, impair his ability to engage in substantial gainful employment. Dkt. #5, pp. 739-774.  Opinions of treating psychiatrists and psychologists are entitled to controlling weight if they are well supported by medical findings and not inconsistent with other substantial evidence. *Steficek v. Barnhart*, 462 F. Supp.2d 415, 419 (W.D.N.Y. 2006). Moreover, "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an

ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Estrella v. Berryhill,* __ F.3d __ , 2019 WL 2273574, at * (2d Cir. May 29, 2019) (internal quotation omitted).

Dr. Roach's treatment notes are consistent with the assessment of plaintiff's psychiatrist, Adam Ashton, who has treated plaintiff for a decade, that although plaintiff's medication regime has controlled his panic attacks, the side effects of his medications include debilitating fatigue which keeps him from maintaining a schedule and impact his focus and concentration. Dkt. #5, p.793. Dr. Ashton also states that plaintiff continues to experience intense symptoms associated with his OCD which would hinder his productivity to the extent that he would be unable to maintain a competitive pace in any work setting and that the combination of his OCD and ongoing depression would cause plaintiff to miss more than 4 workdays per month and be off task more than 25% of an 8 hour workday. Dkt. #5, pp. 791 & 793. The consulting examiner also determined that plaintiff would be moderately limited in his ability to, *inter alia*, maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dkt. #5, pp.403-404.

The vocational expert testified that plaintiff could not miss more than one day of work per month or be off task more than 10% of the day with respect to the medium exertion, semi-skilled positions of inventory clerk or kitchen clerk identified upon remand. Dkt. #13, pp.23-24. Thus, there is no evidence in the record upon which the ALJ could base his determination that plaintiff would be able to meet the attendance and concentration standards of the positions identified by the vocational expert. *See Rowling v. Colvin*, 16-CV-6577, 2018 WL 1151106, at *8 (W.D.N.Y. Mar. 5, 2018) (moderate limitation in ability to maintain concentration precludes ALJ's determination of non-disability where vocational expert testified that no jobs would be available if plaintiff were off task 20% of the time due to impaired concentration); *Bruner v. Colvin*, 16-CV-6735, 2017 WL 4215942, at *5 (W.D.N.Y. Sept. 22, 2017) (moderate limitation in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms equals finding that plaintiff would be off task about 20% of work time, which would preclude ability to work).

"Where the existing record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no further purpose, a remand for calculation of benefits is appropriate." *White v. Comm'r*, 302 F. Supp.2d 170, 174 (W.D.N.Y. 2004), *quoting Martinez v. Comm'r*, 262 F. Supp.2d 40, 49 (W.D.N.Y 2003). Such a determination is particularly appropriate where, as here, a matter has already been remanded and the ALJ failed to address the issue identified for reconsideration. *Peach v. Berryhill*, No. 17-CV-201, 2018 WL 4140613, at *5 (W.D.N.Y. Aug. 30, 2018). Given the consistency of multiple professional observations and opinions over a lengthy

period of time, "substantial evidence on the record as a whole indicates that [plaintiff] is disabled and entitled to benefits." *Bush v. Shalala*, 94 F.3d 40, 46 (2nd Cir. 1996).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #14), is granted and the case is remanded for calculation of benefits and the Commissioner's motion for judgment on the pleadings (Dkt. #18), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:** **Buffalo, New York**
**May 30, 2019**

    *s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**